STATE OF NORTH CAROLINA v. LARRY WATSON

No. 116

(Filed 24 January 1978)

1. **Criminal Law § 66.6— second viewing of lineup—no impermissible suggestiveness**

   A lineup was not impermissibly suggestive because a robbery victim, after stepping outside and telling police which person he had selected, was instructed to go back and view the group again and be absolutely sure, and the victim looked at the lineup again and told the police that he was certain that defendant was one of his assailants, since it would appear that the police officers were acting to guard against misidentification rather than seeking to steer the witness toward a particular suspect in the lineup.

2. **Constitutional Law § 43; Criminal Law § 66.5— right to counsel at lineup—no critical stage—waiver**

   Defendant was not entitled to be represented by counsel at a lineup since (1) the lineup was not a critical stage of the proceedings because defendant had not been placed under arrest and no formal proceedings had been commenced against him, and (2) defendant expressly waived his right to counsel at the lineup.

**3. Criminal Law § 66.3— detention for lineup—statutory procedures—voluntary lineup participation**

It was unnecessary for the police to follow the procedures provided in G.S. 15A-271 *et seq.* relating to involuntary detention for nontestimonial identification where defendant voluntarily participated in a lineup.

**4. Criminal Law § 66.3— lineup—defendant not taken before magistrate—defendant not under arrest**

A lineup identification was not required to be suppressed under G.S. 15A-974(2) on the ground that defendant was not taken before a neutral judicial official without unnecessary delay as required by G.S. 15A-501 and G.S. 15A-511 where defendant was not under arrest but voluntarily came to the police station and appeared in the lineup.

**5. Criminal Law § 50.1— defendant's commission of robbery—opinion testimony**

In this prosecution for armed robbery, testimony by a witness who had not observed the robbery that he telephoned the police anonymously and told them that defendant and two others had committed the robbery constituted inadmissible opinion evidence since the jury was as well qualified as the witness to draw inferences and conclusions from the facts observed by the witness; however, the admission of such testimony was harmless error in light of the extensive competent evidence of defendant's guilt of the robbery.

**6. Criminal Law § 112.1— instructions on reasonable doubt**

The trial court did not err in omitting the words "to a moral certainty" from its charge on reasonable doubt.

**7. Criminal Law § 117.3— instruction that defendant is interested witness—failure to name State's witness as interested witness**

The trial court did not err in instructing that defendant was an interested witness without also instructing that an officer who testified for the State was an interested witness where the court adequately placed before the jury the factors they should have considered in weighing the credibility of the officer's testimony by instructing the jury that it could find witnesses other than defendant to be interested and by summarizing evidence of the officer's alleged attempts to bribe potential witnesses.

**8. Criminal Law § 113.7— instructions on acting in concert**

The trial court's instructions on acting in concert, when considered as a whole, could not have misled the jury into believing that defendant's mere presence at the scene of a robbery would have been sufficient to render him guilty of the robbery.

**9. Criminal Law § 117.2— interested witnesses—request for further instructions**

Instructions on the credibility of interested witnesses concern a subordinate feature of the case, and a party desiring further elaboration in such instructions must aptly tender a request for further instructions.

State v. Watson

10. **Criminal Law § 86.7— consideration of prior convictions—request for instructions**

In the absence of a timely request, the trial court did not err in failing to instruct the jury that evidence of defendant's prior convictions was admitted only for purposes of impeachment.

11. **Criminal Law § 169.2— volunteered testimony—absence of instruction to disregard**

The trial court did not err in failing to instruct the jury to disregard a witness's volunteered statement that one of defendant's alleged accomplices had already been tried since the court's admonishment to the witness not to say "anything about that" sufficiently informed the jury that the statement should not be considered as evidence.

12. **Criminal Law § 101.3— denial of jury view of jail**

The trial court in an armed robbery case did not abuse its discretion in denying the jury's request that it be allowed to view the jail.

13. **Constitutional Law § 79; Robbery § 6— life imprisonment for armed robbery**

A sentence of life imprisonment for armed robbery was within statutory limits and did not constitute cruel and unusual punishment.

DEFENDANT was charged in a bill of indictment, proper in form, with armed robbery. Upon conviction before *Judge Perry Martin*, 30 May 1977 Session, NASH County Superior Court, he was sentenced to life imprisonment.

The State's evidence tended to show the following:

On 3 January 1977 between 9:00 and 9:30 a.m., defendant, in company with two others, robbed the service station of Jessie Howard Johnson in Rocky Mount in Nash County. Johnson was beaten with an iron pipe and stabbed several times in the hip with a butcher knife during the robbery, in which $150.00 in cash was taken.

The evidence for defendant tended to show that:

Defendant was at the home of the Tillery family in Rocky Mount on the date in question between 8:00 a.m. and 9:30 a.m., except for a five-minute interval. The Tillery house was approximately a ten-minute walk from the victim Johnson's service station. In addition, defendant presented a witness who saw four young black males across the street from the service station at about the time of the robbery and later saw these same four running from the area. This witness testified that she could identify

these persons if she saw them again and that defendant was not among them.

Further facts pertinent to the decision are related in the opinion.

*Attorney General Rufus L. Edmisten by Associate Attorney Nonnie F. Midgette for the State.*

*William D. Etheridge and Charles L. Becton for defendant-appellant.*

COPELAND, Justice.

Defendant raises several assignments of error concerning the admission of identification testimony, the instructions of the trial court and other matters. After careful consideration, we have determined that each of these assignments is without merit and should be overruled.

Defendant first contends that the identification testimony of the victim Johnson was improperly admitted because the lineup from which he selected defendant was conducted in an illegal manner. It is asserted that (1) the lineup procedure was impermissibly suggestive and therefore violative of due process; (2) defendant was denied his Sixth Amendment right to counsel at a critical stage of the criminal process; and (3) defendant was improperly detained and compelled to appear in the lineup without a court order, contrary to the provisions of G.S. 15A-271 *et seq.*

When pretrial confrontation procedures are so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification, evidence concerning the out-of-court identification is inadmissible; however, where under the totality of the circumstances the identification of the accused was reliable even though the confrontation was suggestive, the actual in-court identification of the defendant is admissible although evidence of the pretrial confrontation is not. *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972). Defendant maintains that the trial court erred in admitting evidence of the pretrial lineup because it was suggestive and, further, that the likelihood of misidentification was so great that the in-court identification could have had no independent source and thus was inadmissible.

State v. Watson

[1] It appears from the record that two lineups were conducted here. The trial court, after a *voir dire* hearing, found as fact that at no time did anyone suggest to the witness whom he should select from either lineup and that during the second lineup the witness picked out defendant immediately. It was further ascertained that the witness was shown two books of photographs, neither of which contained a photograph of defendant, and after looking at both books was unable to identify anyone. As evidence of the suggestive nature of the lineup, defendant relies primarily on the fact that after the witness stepped outside and told the police which person he had selected, he was instructed to go back and view the group again and be absolutely sure. The witness looked at the lineup again and told the police that he was certain that defendant was one of his assailants. Defendant argues that if the witness was positive initially, there was no need to have him reassure the certainty of his identification. We find this argument unpersuasive. It would appear that the police were acting here to guard against misidentification, rather than seeking to steer the witness toward any particular suspect in the lineup. There was competent evidence in the record to support the trial court's findings of fact; therefore, they are conclusive on appeal. *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972). We find that, based upon our own examination of the record in conjuction with the findings of the trial court, the lineup here was not conducted in a suggestive manner; consequently, the testimony concerning the lineup was not subject to challenge on Due Process grounds.

[2] Defendant also maintains that his right to counsel at the pretrial confrontation was denied, requiring the exclusion of testimony concerning his having been identified at the lineup. While a person has a right to the presence of counsel at a pretrial lineup when it is a critical stage of the criminal prosecution, *Gilbert v. California*, 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951 (1967), this right attaches only at or after the initiation of adversary judicial proceedings against him. *Kirby v. Illinois*, 406 U.S. 682, 32 L.Ed. 2d 411, 92 S.Ct. 1877 (1972); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), *death sentence vacated*, 428 U.S. 902, 49 L.Ed. 2d 1205, 96 S.Ct. 3202 (1976).

Although defendant argues to the contrary, it appears from the record in the instant case that at the time of the lineup defendant had not been placed under arrest, nor had any formal pro-

ceedings been commenced against him. In addition, the trial court found as a fact that defendant was asked to appear in the lineup and, prior to the confrontation, was advised of his right to have an attorney present, which he waived. This finding of fact is conclusive, since it is supported by competent evidence in the record. *State v. Taylor, supra.* We hold, therefore, that defendant was not entitled to the presence of counsel in the first instance because this lineup was not a critical stage of the proceedings and that any such right defendant arguably may have possessed had been expressly waived.

[3]  Defendant next contends that he was entitled to the benefit of the procedures outlined in G.S. 15A-271 *et seq.*, including the presence of counsel. It appears from the Official Comment preceding the text of the statute, however, that the thrust of this portion of the Criminal Procedure Act was to provide the State with a valuable new investigative tool to compel the presence of *unwilling* suspects for nontestimonial identification procedures, even though insufficient probable cause existed to permit their arrest. *See,* Comment, 12 Wake Forest L. Rev. 387 (1976).

In examining the record we find that defendant testified on *voir dire* that he voluntarily went to the police department. Additionally, the trial court found on competent evidence that defendant willingly appeared in the lineup. From these facts we conclude that defendant voluntarily participated in the pretrial confrontation; thus, it was unnecessary for the police to utilize the procedures in G.S. 15A-271 *et seq.* allowing involuntary detention for nontestimonial identification. Further, the trial court determined, as noted above, that defendant was informed that he had a right to the presence of an attorney at the lineup and agreed to appear without one.

[4]  In his final argument concerning the identification procedures here, defendant asserts that he was in fact in custody during the time he was placed in the lineup and thus, under G.S. 15A-501 and G.S. 15A-511, should have been taken before a neutral judicial official without unnecessary delay. Since this was not done, defendant maintains that all identification evidence should have been suppressed under G.S. 15A-974(2). As we determined earlier, however, defendant voluntarily came to the police station and appeared in the lineup; therefore, he was not under arrest and the statutes cited are inapplicable. All defendant's

assignments of error regarding the admission of identification evidence are without merit and overruled.

[5]  Defendant next assigns as error the admission of testimony from a State's witness who had not observed the robbery to the effect that he had telephoned the police anonymously and told them that defendant and two others had "ripped off Johnson's Service Station." This statement was later repeated in the form of corroborative testimony by two police officers who talked with the informant some time after the telephone call was received. Defendant excepts to the admission of this statement on the grounds that it was an opinion and asserts that, when considered with the corroboration testimony by the officers, it greatly prejudiced defendant because the informant was allegedly a witness of questionable reliability. Prior to relating the content of the telephone call, the informant had testified he overheard defendant, along with Demorris Carter and Percy Ricks, planning the robbery and saw them arming themselves before they left. He further stated that upon their return he overheard them bragging about what they had done to the operator of the service station and saw them divide the money. The informant's conclusion that defendant had robbed the station was apparently based on these observations. Still, "Opinion evidence is generally inadmissible 'whenever the witness can relate the facts so that the jury will have an adequate understanding of them and the jury is as well qualified as the witness to draw inferences and conclusions from the facts.'" *State v. Lindley*, 286 N.C. 255, 257, 210 S.E. 2d 207, 209 (1974).

In the instant case the facts observed by the informant were certainly comprehensible by the jury. Indeed, they had been clearly related to the jury prior to the time the opinion statement was elicited from him. Further, it does not appear that the witness was any better qualified than the jury to draw inferences and conclusions from these facts; thus, the admission of his opinion was error.

Nonetheless, when the exclusion of an erroneous statement would not likely have produced a different result, error in its admission is not sufficient grounds for a new trial. *State v. Mack*, 282 N.C. 334, 193 S.E. 2d 71 (1972). The remainder of the State's evidence tended to show that: (1) defendant was positively identified by the victim as one of the three persons who participated

in the robbery; (2) a week before the robbery defendant asked another State's witness where the money at the service station was kept; (3) defendant came to the witness's house the night before the robbery and told her that he was going to get the money at the station; (4) early on the morning of the robbery, defendant returned to the witness's house and got two kerosene cans; (5) the victim was assaulted while filling a kerosene can brought by one of the robbers; (6) defendant was overheard planning the robbery the night before and seen arming himself the next morning with a butcher knife; (7) one of defendant's companions was seen carrying an iron pipe the morning of the robbery; (8) the victim was beaten with an iron pipe and stabbed in the hip with a butcher knife; (9) defendant and two others were overheard after the robbery bragging about what they had done to the station operator and were observed dividing up money. In view of the extensive evidence against defendant, we are convinced that the result would have been the same had the trial court properly excluded the opinion statement by the witness and the accompanying corroborative testimony; consequently, this assignment is overruled.

[6] Defendant also assigns as error several portions of the trial court's instructions to the jury. It is first contended that the court erred in failing to adequately define reasonable doubt after it undertook to do so. The charge of the court on this subject reads, in part, as follows:

> "A reasonable doubt is not a vain, imaginary or fanciful doubt, but it is a sane rational doubt based upon good judgment and common sense. When it is said that the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, it means that the jury must be fully satisfied or entirely convinced of the truth of the charge against the defendant. It does not mean that you must be satisfied beyond any doubt or all doubt. If after considering, comparing and weighing all the evidence, the minds of the jurors are left in such a condition that they cannot say that they have an abiding faith in the defendant's guilt, then they have a reasonable doubt. Otherwise, you do not have a reasonable doubt.

> "A reasonable doubt as that term is employed in the administration of criminal law in North Carolina is an honest,

substantial misgiving, ordinarily generated by the insufficiency of the proof, an insufficiency which fails to convince your judgment and conscience and satisfy your reason as to the guilt of the accused."

In the absence of a request, the trial court need not define reasonable doubt. *State v. Shepherd*, 288 N.C. 346, 218 S.E. 2d 176 (1975). Once it undertakes to do so, however, the definition should be given in substantial accord with those approved by this court, although no exact formula is required. *State v. Hammonds*, 241 N.C. 226, 85 S.E. 2d 133 (1954). Defendant argues that the trial court should have defined beyond a reasonable doubt as possessing "an abiding faith *to a moral certainty* in the defendant's guilt," citing *State v. Schoolfield*, 184 N.C. 721, 114 S.E. 466 (1922). It is his assertion that by omitting the words "to a moral certainty" from this portion of the charge, the court allowed the jury an opportunity to convict defendant upon a mere general belief in his guilt. After careful consideration, however, we feel that the court's overall definition of reasonable doubt compares favorably with that recently approved in *State v. Wells*, 290 N.C. 485, 226 S.E. 2d 325 (1976), and that the substance of reasonable doubt was conveyed to the jury. Additionally, the words "to a moral certainty" are synonymous with beyond a reasonable doubt, *Rhinehart v. State*, 175 Ark. 1170, 299 S.W. 755 (1927); thus, they add nothing to the definition of reasonable doubt and indeed one may require as much explanation as the other. *Hopt v. Utah*, 120 U.S. 430, 30 L.Ed. 708, 7 S.Ct. 614 (1887).

The next exception brought forward by defendant concerns the charge of the court on interested witnesses, which reads as follows:

"The defendant is always an interested witness in a criminal case. You may find that a witness in addition to the defendant is also interested in the outcome of this trial. In addition to the defendant in deciding whether or not to believe such a witness, or any other interested witness, you may take their interest into account. If after doing so you believe his or her testimony in whole or in part, you should treat what you believe as you would any other believable evidence that you have heard in the case."

[7] Defendant argues that by failing to include two of the State's witnesses by name in this instruction, the court imposed a mandatory standard for consideration of defendant's testimony and a permissive standard for that of the other witnesses. We note at the outset that instructions on the credibility of interested witnesses concern a subordinate feature of the case; thus, the court need not instruct on this subject absent a request. *State v. Vick*, 287 N.C. 37, 213 S.E. 2d 335, *cert. dismissed*, 423 U.S. 918, 46 L.Ed. 2d 367, 96 S.Ct. 228 (1975). Yet, once the court elects to charge on such a feature, it must do so fully and accurately. *State v. Rainey*, 236 N.C. 738, 74 S.E. 2d 39 (1953). Nonetheless, the trial court may instruct on the defendant's status as an interested witness without being required to give a like instruction, without request, as to possibly interested State's witnesses. *State v. Eakins*, 292 N.C. 445, 233 S.E. 2d 387 (1977).

In the case *sub judice*, the court in summarizing the evidence recounted the alleged attempts at bribing potential witnesses by one of the police officers and later instructed the jury that it could find other witnesses in addition to the defendant to be interested. In our judgment this was sufficient to adequately place before the jury the factors they should have considered in weighing the credibility of the officer's testimony and thus was not error. There was no evidence of possible interest in the outcome on the part of any other State's witness; therefore, this portion of the assignment is without merit.

[8] Defendant further maintains that the court's instructions on acting in concert could have misled the jury into believing that defendant's mere presence at the scene of the robbery would have been sufficient to render him guilty of the crime charged. This contention is based on language in the charge to the effect that if the jury should find that ". . . the defendant, Mr. Watson, another person or persons acting with him . . ." had committed the robbery, it would be the duty of the jury to return a verdict of guilty.

It is well-settled that mere presence at the scene of a crime is insufficient to make one guilty of the offense. *State v. Rankin*, 284 N.C. 219, 200 S.E. 2d 182 (1973). It is equally clear, however, that a charge is to be construed as a whole and if, when so construed, it is sufficiently clear that no reasonable cause exists to believe that the jury was misled or misinformed, any exception

thereto will not be sustained even though the instruction could have been more aptly worded. *State v. Sanders*, 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied*, 423 U.S. 1091, 47 L.Ed. 2d 102, 96 S.Ct. 886 (1976).

In the paragraph immediately preceding the portion of the charge noted above, the court instructed the jury that, "[M]ere presence at the scene of a crime is insufficient to convict the defendant but if two or more persons act together with a common purpose to commit robbery with a dangerous weapon, each of them is held responsible for the acts of the others done in the commission of a robbery with a dangerous weapon." This language effectively precluded any possibility of confusion on the part of the jury regarding the effect of mere presence at the crime scene. For the reasons stated above, this assignment concerning the charge of the court is overruled in its entirety.

In his next assignment of error, defendant asserts that the trial court violated G.S. 1-180 in charging the jury by (1) unfairly summarizing the evidence by not pointing out cross-examination of State's witnesses while specifically pointing out testimony of defendant's witnesses on cross-examination; (2) singling out defendant as an interested witness without also indicating that State's witnesses were interested; and (3) referring to evidence of defendant's prior convictions without giving cautionary instructions. We initially note that at the conclusion of its charge the court inquired of counsel for both sides whether they had any additional requested instructions or corrections to the instructions and was informed, after making two corrections in the recapitulation of the evidence, that they did not. It is manifest that G.S. 1-180 requires only a clear instruction on all substantive features of the case, defining and applying the law to the facts and stating the contentions of the parties. *State v. Hunt*, 283 N.C. 617, 197 S.E. 2d 513 (1973). If a defendant wishes fuller instructions on the evidence or his contentions, he must request them at trial or be precluded from assigning error concerning their absence. *State v. Ford*, 266 N.C. 743, 147 S.E. 2d 198 (1966).

[9] Regarding the court's interested witness instruction, we reiterate that such an instruction concerns a subordinate feature of the case. *State v. Vick, supra.* On this subject we have earlier held that, "The requirement of G.S. 1-180 that the judge state the evidence is met by presentation of the principal features of the

evidence relied on respectively by the prosecution and defense. A party desiring further elaboration on a subordinate feature of the case must aptly tender request for further instructions." *State v. Guffey*, 265 N.C. 331, 332, 144 S.E. 2d 14, 16 (1965). Since no such request appears from the record before us and we have found defendant's similar earlier exception to be without merit, this portion of the assignment is overruled.

[10] The testimony concerning defendant's prior convictions was elicited from him on cross-examination without objection or request for cautionary instructions. Although such evidence is competent only as it relates to a defendant's credibility as a witness and not as substantive evidence, it is incumbent upon a party challenging its use to request a limiting instruction. *State v. Goodson*, 273 N.C. 128, 159 S.E. 2d 310 (1968). Absent such a request, no assignment of error can be predicated on the court's failure to include such an instruction in its charge to the jury. *See, State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976). Defendant's assignment of error alleging violations of G.S. 1-180 in the charge of the court is without merit and overruled.

[11] During the direct examination of the witness Johnson, the court asked the following question: "Are you talking about the two people that you say were with him?" The witness responded, "One of them I haven't ever been able to identify but the other one has already been tried . . ." The court immediately interjected, "Don't tell me anything about that."

Defendant argues that the court's failure to instruct the jury to disregard the witness's volunteered statement that one of defendant's alleged accomplices had already been tried was prejudicial error. When the court promptly cut off further discussion of this admittedly improper subject, however, it could only have been understood by the jury as an express disapproval of this remark such that it was not to be considered as evidence. *State v. Battle*, 269 N.C. 292, 152 S.E. 2d 191 (1967).

[12] After receiving the case, the jury at one point interrupted their deliberations and returned to open court. At this time, the jury foreman requested permission to approach the bench and ask a question. The court instead directed the foreman to ask the question so that the defendant and counsel for both sides could hear it. The foreman then informed the court that the jury had a

question in mind and would like to view the jail. The court asked if that was all the jury wanted, to which the foreman answered yes, and then denied them permission to view the jail, sending them back to resume deliberations. Defendant now argues that the court erred by refusing to answer a question from the jury and by refusing their request to view the jail.

There was nothing in the record to indicate that the jury wished to inquire into anything other than the jury view. Moreover, the determination of whether to grant a jury view is within the discretion of the trial court. *State v. Payne*, 280 N.C. 150, 185 S.E. 2d 116 (1971); *State v. Ross*, 273 N.C. 498, 160 S.E. 2d 465 (1968). We find no evidence in the record of an abuse of this discretion; therefore, this contention is without merit.

[13]  In his final assignment of error, defendant contends that the trial court erred in failing to set aside the sentence of life imprisonment as excessive and so disproportionate as to constitute cruel and unusual punishment. At the time of defendant's conviction, the prescribed punishment for armed robbery under G.S. 14-87(a) was imprisonment for not less than five years nor more than life imprisonment. The punishment provisions of this statute are constitutionally valid. *State v. Legette*, 292 N.C. 44, 231 S.E. 2d 896 (1977). The actual length of a sentence imposed is at the discretion of a trial judge so long as it is within statutory limits. *State v. Slade*, 291 N.C. 275, 229 S.E. 2d 921 (1976). A sentence which does not exceed the maximum authorized by statute is not cruel and unusual in a constitutional sense. *State v. Jenkins*, 292 N.C. 179, 232 S.E. 2d 648 (1977).

Having examined the assignments of error and found no showing of prejudice to defendant, it is the judgment of this Court that in the trial below there was

No error.