STATE OF NORTH CAROLINA v. LESTER LEE BROWN

No. 39A84

(Filed 6 November 1984)

**1. Rape and Allied Offenses § 4.3— another rape accusation by victim — in-camera hearing — admission of evidence**

Cross-examination of the prosecutrix in a rape trial concerning her prior accusation of rape against another man was properly prohibited until the trial judge had conducted an in-camera hearing to determine the relevancy of the evidence. In this case, the trial court did not in fact prohibit defense counsel from asking questions with respect to the complainant's prior accusation of rape where the court permitted defense counsel to ask questions which apprised the jury that the complainant had earlier accused another man of raping her and that a police investigation revealed no basis for the institution of criminal proceedings against the alleged offender.

**2. Criminal Law § 42.4— admissibility of knife — connection to crimes**

A pocketknife found on the floor of a car in which a kidnapping and rape allegedly occurred was sufficiently connected to the crime for its admission into evidence where an officer testified that on the morning after the sexual assault, he arrested defendant standing next to the car and found the open pocketknife lying on the floor in the back; another witness identified the knife as being one defendant had shown him in the car prior to the crimes; and the victim testified that she resisted defendant's sexual advances until he held a knife to her throat and threatened to kill her.

**3. Criminal Law § 71— sense perceptions from telephone conversation — shorthand statements of fact**

Testimony by a witness that, based on a telephone conversation with the victim on the night of an alleged rape, she thought the victim was scared and that the victim pretended to be calm and tried to signal the witness that something was wrong was admissible as shorthand statements of fact based upon the sense impressions or perceptions of the witness. Even if the statements were improperly admitted, defendant was not prejudiced because such evidence was merely corroborative of the victim's own admissible testimony concerning how she felt when speaking on the telephone with the witness.

**4. Criminal Law § 112.1— charge on reasonable doubt**

The trial court did not err in refusing to include an instruction that the jury "must be satisfied to a moral certainty" of defendant's guilt in its charge on reasonable doubt where the court's definition of reasonable doubt properly informed the jury of the State's burden of proof and was, in fact, in substantial conformity with the instruction requested by defendant.

**5. Rape and Allied Offenses § 6.1— failure to submit lesser offenses of attempted rape**

      The trial court in a prosecution for first-degree rape did not err in failing to submit to the jury the lesser included offenses of attempted first-degree rape and attempted second degree rape on the ground that the evidence of penetration was equivocal, although the victim testified that defendant "tried to put a flaccid penis inside of me," where an examination of the victim's entire testimony plainly shows that defendant was successful in achieving penetration despite his failure to obtain an erection.

**6. Kidnapping § 1.3— conviction upon theories not alleged in indictment — instructions as plain error**

      Where defendant was tried under an indictment alleging as the theory of kidnapping that defendant confined the victim for the purpose of facilitating commission of the felony of rape and alleging as the basis for first-degree kidnapping that defendant did not release the victim in a safe place, the trial court committed "plain error" in instructing the jury that in order to convict defendant of kidnapping it must find that defendant confined and restrained the victim "for the purpose of terrorizing her," and that in order to convict defendant of first-degree kidnapping it must find that defendant "sexually assaulted" the victim.

**7. Criminal Law § 138— serious mental injury to victim — aggravating factor — insufficient evidence**

      The evidence was insufficient to support the trial court's finding as an aggravating factor that defendant caused serious mental injury to a kidnapping and rape victim "in that she has been confined to the hospital a portion of this week, even though she is now at home, according to the statement of her husband," where the only evidence offered by the State in support of this factor was a statement by the district attorney that he had been told by the victim's husband that the victim entered the hospital after testifying at trial, had been heavily sedated, and was now resting at home.

**8. Criminal Law § 138— aggravating factors based on same evidence**

      The trial court erred in finding both the statutory aggravating factor that defendant had a prior conviction for a criminal offense punishable by more than 60 days' confinement and the nonstatutory aggravating factor that he had previously been convicted of rape where each aggravating factor was premised upon defendant's prior rape conviction. G.S. 15A-1340.4(a)(1)(o).

      Justice EXUM dissenting in part.

APPEAL by defendant from *Walker, J.,* at the 31 October 1983 Criminal Session of Superior Court, FORSYTH County.

Defendant was charged in indictments, proper in form, with first-degree rape, first-degree sexual offense, first-degree kidnapping and second-degree kidnapping. He entered a plea of not guilty to each offense.

A detailed recitation of the facts surrounding the commission of the crimes charged is unnecessary for discussion of the issues raised on appeal. Briefly, the State's evidence tended to show that on the evening of 10 July 1983 defendant and Ricky Odell Duncan drove from Siler City to Winston-Salem, North Carolina. Upon arriving in Winston-Salem, the two men passed Elizabeth Anne Noles, who was walking her dog on the side of a road that led to defendant's brother-in-law's house. Duncan and defendant drove to defendant's brother-in-law's and, upon discovering that no one was at home, returned to where Ms. Noles was walking her dog. Defendant got out of the car and approached Noles, asking her if anything was wrong. As defendant grabbed her by the arm, she passed out and fell onto the road. Defendant picked her up and placed her in the back seat of the car.

After driving for approximately five miles, Duncan stopped the car on a dirt road and, pursuant to defendant's request, went for a walk leaving defendant and Ms. Noles alone. Ms. Noles testified that defendant then got into the back seat and forced her to lift her dress and remove her panties. She stated that defendant repeatedly attempted sexual intercourse and did, in fact, penetrate her, although he was unable to obtain an erection. She remembered that defendant then performed oral sex upon her and that she passed out again. When she regained consciousness, defendant had returned to the front passenger seat and Duncan was in the driver's seat of the car.

Duncan then drove back to Siler City where Noles was permitted to call a friend, Regina Reel, from a pay phone. Both Noles and Ricky Duncan spoke with Ms. Reel in an effort to arrange a place where Reel could meet them. The two of them returned to the car and Duncan began to drive again. Shortly thereafter, defendant grabbed Duncan's shorts and began twisting them tightly. Duncan slammed on the brakes and he and Ms. Noles ran from the car.

Officers of the Chatham County Sheriff's Department located defendant the next morning standing next to Duncan's abandoned car. After conducting a search of the vehicle, Officer Shamburger discovered an open pocketknife on the floor behind the driver's seat. Ms. Noles testified at trial that defendant used this knife to force her to submit to the rape and sexual offense.

Defendant offered no evidence.

The jury found defendant guilty of the first-degree rape, first-degree sexual offense and first-degree kidnapping of Elizabeth Anne Noles. Defendant was, however, found not guilty of the kidnapping of Ricky Duncan.

Defendant was sentenced to consecutive terms of life imprisonment for first-degree rape and first-degree sex offense. In sentencing defendant on the kidnapping conviction, the trial judge found the existence of three aggravating factors: (1) that defendant had a prior conviction or convictions for criminal offenses punishable by more than 60 days' confinement; (2) that defendant caused serious injury to the prosecuting witness "in that she has been confined to the hospital a portion of this week . . . according to the statement of her husband, Mr. Noles"; and (3) that defendant had previously been convicted of a sex offense. The judge found no mitigating factors. Finding therefore that the aggravating factors outweighed the factors in mitigation, Judge Walker entered judgment imposing the maximum sentence of 40 years' imprisonment for the crime of first-degree kidnapping.

Defendant appealed the life sentences directly to this Court as a matter of right pursuant to N.C.G.S. 7A-27(a). We allowed his motion to bypass the Court of Appeals on the kidnapping conviction on 11 May 1984.

*Rufus L. Edmisten, Attorney General, by Thomas J. Ziko, Assistant Attorney General, for the State.*

*Carl F. Parrish for defendant-appellant.*

BRANCH, Chief Justice.

[1] By his first assignment of error, defendant contends the trial court erred in restricting defense counsel's cross-examination of the prosecuting witness. Specifically, defendant complains that he was not permitted to cross-examine Elizabeth Noles extensively regarding a prior accusation of rape she made against another man approximately sixteen months before the trial of this case.

Prior to trial, defense counsel filed a motion in which he requested leave "to admit evidence of complainant's prior statements accusing others of improper sexual advances, specifically

the statements surrounding the alleged incident occurring in May, 1982, as recorded in police report 28053." The court did not rule on this motion prior to trial.

During defense counsel's cross-examination of the prosecuting witness, the following transpired:

> Q. Miss Noles, back in May of 1982, you filed a report at that time that you had been raped by a black man, did you not?
>
> A. Yes, sir.
>
> Q. And in that report, did you make the statement—
>
> MR. LYLE: OBJECTION.
>
> THE COURT: SUSTAINED.
>
> Q. Were you taken to a dark dirt road on that occasion?
>
> MR. LYLE: OBJECTION.

At that point, the jury was excused and Judge Walker conducted an in-camera hearing to consider arguments with respect to the propriety of further questions on this subject. During the conference, defense counsel requested and received the court's approval of several questions relating to the complainant's prior accusation of rape. From the record, it appears defense counsel was satisfied with the trial court's rulings for he interposed no objection to the judge's failure to allow any specific questions, nor did he object to the wording of the questions he would be permitted to ask.

When court reconvened, defense counsel continued with his cross-examination of Ms. Noles. He then asked and received answers to each of the questions previously approved at the in-camera hearing. From this line of questioning, the jury was apprised of the fact that the complainant had earlier accused another man of raping her and that a police investigation revealed no basis for the institution of criminal proceedings against the alleged offender.

Our review of the trial proceedings leads us to conclude that the trial court properly sustained the prosecutor's objection to defense counsel's initial inquiry into the witness's prior accusation

of rape. Cross-examination relating to evidence of this sort during a rape trial is properly prohibited until the trial judge has conducted an in-camera hearing to determine the relevancy of the evidence. N.C. Gen. Stat. § 8-58.6(c) (1981).

Furthermore, we note that during defense counsel's subsequent cross-examination on this subject, the State objected to only one question and defense counsel abandoned it before the trial judge ruled on the objection.

We hold that defendant is not entitled to relief under this assignment of error since there is no evidence of record that the trial judge in fact prohibited defense counsel from asking any questions with respect to the complainant's prior accusations of rape. We therefore do not address defendant's contention that evidence of the prosecuting witness's prior accusations of sexual misconduct is not barred by N.C.G.S. § 8-58.6 (the North Carolina Rape Shield statute).

[2]  Defendant next argues that the trial court erred in admitting into evidence a pocketknife which Officer Shamburger found on the floor in the back of Duncan's abandoned car on the morning of 11 July 1983. Defendant takes the position that it was error to admit the knife because the State failed to present sufficient proof that it was in some way connected to the crimes charged. We do not agree.

Ricky Duncan testified that on the evening of 10 July 1983 before he and defendant encountered Ms. Noles, defendant took a knife from his pocket and showed it to Duncan. Ricky identified that knife as State's Exhibit 1. The victim testified that she resisted defendant's sexual advances until he held "a cold knife" to her throat and threatened to kill her. Finally, Officer Shamburger stated that on the morning following the sexual assault, he arrested defendant standing next to Duncan's automobile. Shamburger stated that at that time he saw "an open pocketknife lying back on the floor behind the driver's seat." This was the same knife that Duncan identified as belonging to defendant and the same knife that was subsequently introduced into evidence as State's Exhibit 1. We therefore hold that the trial judge correctly admitted the pocketknife into evidence.

[3] Defendant also objects to certain portions of Regina Reel's testimony wherein she described the telephone conversations she had with the victim and Ricky Duncan on the night of the rape. Ms. Reel testified that based on those conversations she thought Duncan and Noles were scared. She further stated that Ms. Noles pretended to be calm and tried to signal Ms. Reel that something was wrong. It is defendant's contention that Regina Reel was not competent to testify as to these facts which were "beyond her personal knowledge."

This contention is without merit. The testimony to which defendant objects was properly admitted as shorthand statements of fact based upon the sense impressions or perceptions of the witness. *See* 1 Brandis on North Carolina Evidence § 129 (2d rev. ed. 1982) and cases cited therein. "The emotion displayed by a person on a given occasion is a proper subject for opinion testimony by a non-expert witness." *State v. Looney*, 294 N.C. 1, 14, 240 S.E. 2d 612, 619 (1978).

Furthermore, assuming *arguendo* that the statements were improperly admitted, defendant was not prejudiced because this evidence was merely corroborative of the victim's own clearly admissible testimony concerning how she felt when speaking on the telephone with Ms. Reel.

[4] We next address defendant's contention that the trial court erred in refusing to give his requested instruction on the definition of "reasonable doubt."

During the instructions conference, defendant requested the judge to define reasonable doubt in accordance with the definition approved by this Court in *State v. Hammonds*, 241 N.C. 226, 85 S.E. 2d 133 (1954). In *Hammonds*, we held that the jury may be instructed that they "must be satisfied to a moral certainty" of the truth of the charge. In this case, the trial court refused to include such language in its definition of reasonable doubt and instead instructed as follows:

What is a reasonable doubt? It's a doubt which is based on reason and common sense arising out of some or all of the evidence, as the case may be, or lack or insufficiency of the evidence, as the case may be. It means that you must be *fully satisfied or entirely convinced* of the guilt of the defendant

as to the matter you're considering. The term beyond a reasonable doubt does not mean beyond all doubt or beyond all possible doubt. It means beyond a reasonable doubt.

(Emphasis added.)

We agree with defendant that when a special instruction is requested the court is required to give it, at least in substance, if it is a correct statement of the law supported by the evidence. *State v. Corn*, 307 N.C. 79, 296 S.E. 2d 261 (1982). The court is not required, however, to recite the defendant's requested instruction verbatim. It is sufficient if the jury is instructed "in substantial conformity to the prayer." *State v. Davis*, 291 N.C. 1, 14, 229 S.E. 2d 285, 294 (1976), *quoting State v. Bailey*, 254 N.C. 380, 386, 119 S.E. 2d 165, 170 (1961).

We have held that a proper definition of reasonable doubt need not include language that the jury must be satisfied of the defendant's guilt "to a moral certainty." *State v. Watson*, 294 N.C. 159, 167, 240 S.E. 2d 440, 446 (1978). Furthermore, our review of the charge convinces us that the trial court's definition of reasonable doubt properly informed the jury of the State's burden of proof and was, in fact, in "substantial conformity" with the instruction requested by defendant. This assignment of error is overruled.

[5] Defendant next contends the trial court erred in failing to submit to the jury the charges of attempted first-degree rape and attempted second-degree rape.

In support of his argument that the trial court erred in refusing to instruct on the lesser included offenses, defendant cites the victim's testimony that after defendant placed a knife to her throat and removed her panties, "he *tried* to put a flaccid penis inside of me." (Emphasis added.) From this, defendant argues the evidence of penetration was equivocal and therefore instructions on attempted rape were warranted.

"Instructions on the lesser included offenses of first-degree rape are warranted only when there is some doubt or conflict concerning the crucial element of penetration." *State v. Wright*, 304 N.C. 349, 353, 283 S.E. 2d 502, 505 (1981). In a prosecution for rape, evidence of the *slightest* penetration of the female sex

organ by the male sex organ is sufficient for vaginal intercourse and the emission of semen need not be shown to prove the offense. *State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968); *State v. Monds*, 130 N.C. 697, 41 S.E. 789 (1902).

Our examination of the victim's *entire* testimony plainly shows that defendant was successful in achieving penetration despite his failure to obtain an erection. The prosecutrix testified on direct examination as follows:

Then he tried to put a flaccid penis inside of me over and over and over and over and over and over.

Q. Was he successful?

. . .

Q. (By Mr. Lyle, Continuing) Mrs. Noles, I don't want to go back any. Do you remember where you were in your testimony? You stated that he had repeatedly tried —

A. Yes, sir.

Q. — to put his penis in you, and I asked you was he successful at any point. Was he?

A. At one time he made me touch him and push it in. I couldn't but as far — and then when he started to move, it came out again.

Q. Was he able to push it in some —

A. Somewhat.

Q. Somewhat into your self?

A. As much as you can do with one of those. But when he moved again, it came out and he got very, very angry.

The record fails to support defendant's contention that the evidence of penetration was conflicting and the trial judge therefore correctly refused defendant's requested instructions on the lesser included offenses of first-degree rape and second-degree rape.

**[6]**   By his final assignment of error pertaining to the guilt phase of the trial, defendant contends the trial court erred in its instructions on the first-degree kidnapping charge because they permitted the jury to convict on theories of the crime which were not charged in the bill of indictment nor supported by the evidence at trial.

Defendant was tried under N.C.G.S. § 14-39 which provides, in pertinent part, as follows:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

(4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

N.C. Gen. Stat. § 14-39 (1981 & Cum. Supp. 1983).

The indictment returned against defendant by the Forsyth County grand jury on 19 September 1983 charged as follows:

> The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did kidnap Elizabeth Anne Noles, a person who had attained the age of 16 years, without her consent, by unlawfully removing her from one place to another and confining and restraining her for the purpose of facilitating the commission of a felony, to wit: attempted rape. The said Elizabeth Anne Noles was not released by the defendant in a safe place.

Thus, the theory of the kidnapping charge was that defendant confined the victim for the purpose of facilitating commission of a felony under N.C.G.S. 14-39(a)(2), and the basis for first-degree kidnapping under subsection (b) was that defendant did not release the victim in a safe place.

In its charge to the jury, however, the trial court instructed that to convict defendant of kidnapping, the jury must find that he "removed, restrained and confined" the victim "for the purpose of terrorizing" her, a theory under N.C.G.S. § 14-39(a)(3) totally distinct from the theory alleged in the indictment under (a)(2) (for the purpose of facilitating commission of a felony). Furthermore, the judge instructed the jury that to convict of first-degree kidnapping they must find that defendant "sexually assaulted" the victim, rather than that he failed to release her in a safe place. In sum, then, the judge instructed on different theories for both the crime of kidnapping and the basis for first-degree kidnapping than were alleged in the indictment.

We note that the trial judge instructed erroneously more than once. When the jury returned to the courtroom prior to their release for the noon recess, the foreman requested a written copy of the elements of the charges against defendant. The court reporter transcribed the trial judge's original erroneous instructions which the judge then read to the jury before they resumed deliberations. The court thus stated for a second time that in order to convict defendant of first-degree kidnapping, the jury was required to find that defendant confined and restrained the

victim "for the purpose of terrorizing her" and that he "sexually assaulted" her.

The State concedes the instructions were erroneous but advances the argument that defense counsel failed to interpose a timely objection, thereby waiving appellate review on this issue.

It is true defendant posed no objection to that portion of the trial judge's instruction wherein he charged that to convict defendant of the crime of first-degree kidnapping, the jury must find that defendant "sexually assaulted" the victim. As to the instruction relating to terrorization of the victim as the basis for the kidnapping charge, defense counsel objected after the trial judge so instructed the jury for the second time following their return from the noon recess. The State is correct, however, in its assertion that this objection was untimely, for North Carolina Rule of Appellate Procedure 10(b)(2) prevents a party from assigning "as error any portion of the jury charge or omission therefrom unless he objects thereto *before* the jury retires to consider its verdict, . . . ." (Emphasis added.) Thus, we are faced with the question of whether the instructions constitute "plain error" under the standards adopted by this Court in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983) and are therefore reviewable despite defendant's failure to comply with Rule 10(b)(2).

Because our review of the entire record convinces us that "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty," *Odom* at 660, 300 S.E. 2d at 378, *quoting United States v. McCaskill*, 676 F. 2d 995, 1002 (4th Cir. 1982), we conclude that the errors in the instructions are "plain" and that defendant should receive a new trial on the first-degree kidnapping charge.

This Court has consistently held that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon a theory not supported by the bill of indictment. *State v. Taylor*, 301 N.C. 164, 170, 270 S.E. 2d 409, 413 (1980); *State v. Dammons*, 293 N.C. 263, 272, 237 S.E. 2d 834, 840-41 (1977). Unlike the short-form indictments authorized for homicide (N.C. Gen. Stat. § 15-144 (1983)) and rape (N.C. Gen. Stat. § 15-144.1 (1983)), an indictment charging first-degree kidnapping *must* include information "regarding the factual basis under which the State intends to proceed and, under the authority of *Taylor* and cases cited

therein the State is limited to that factual basis at trial." *State v. Moore*, 311 N.C. 442, 463, 319 S.E. 2d 150, 158 (1984) (Meyer, J., concurring). *See also State v. Jerrett*, 309 N.C. 239, 307 S.E. 2d 339 (1983) (indictment for kidnapping will not support conviction unless all elements of crime accurately and clearly alleged in indictment).

In this case, the jury was obviously having some difficulty understanding the elements of the crimes charged, for they asked the trial judge for further clarification on two occasions. Each time the trial judge instructed, he erroneously informed the jury that they could convict defendant of first-degree kidnapping on theories totally distinct from those alleged in the bill of indictment. We are especially concerned by the "terrorism" instruction, for the State presented absolutely no evidence directed to proof of the theory that defendant kidnapped Ms. Noles for the purpose of terrorizing her.

In conclusion, the judge's instructions permitted the jury in this case to predicate guilt on theories of the crime which were not charged in the bill of indictment and which were, in one instance, not supported by the evidence at trial. We therefore hold that under the factual circumstances of this case, there was "plain error" in the jury instructions as that concept was defined in *Odom* and defendant must therefore receive a new trial on the first-degree kidnapping charge.

Although unnecessary to decision in this case in light of our holding that defendant is entitled to a new trial on the kidnapping charge, in the interest of judicial economy we address defendant's arguments relating to certain aggravating factors the trial court found in sentencing defendant for this offense. It is, of course, possible these issues may arise again upon retrial.

[7] First, defendant contends the trial court erred in finding as an aggravating factor that defendant caused serious mental injury to the victim "in that she has been confined to the hospital a portion of this week, even though she is now at home, according to the statement of her husband, Mr. Noles." Defendant argues the State presented insufficient evidence to support this non-statutory aggravating factor. We agree.

The only evidence offered by the State in support of this factor was a statement by the district attorney that he had been told by the victim's husband that Ms. Noles entered the hospital after testifying at trial, had been heavily sedated, and was now resting at home. Mr. Noles, however, did not testify and the State failed to offer any medical testimony or reports in support of their contention that Ms. Noles was suffering from a "serious mental injury" or that, if so, her present condition was occasioned by any action of defendant. Since there was no evidence to support a finding that defendant caused Ms. Noles' hospitalization during the trial other than the prosecutor's reiteration of Mr. Noles' statement that she was confined to bed and heavily sedated, we hold that the trial judge erred in finding this aggravating factor.

[8] Defendant also argues that the trial judge erred in finding both the statutory aggravating factor that he had a prior conviction for a criminal offense punishable by more than 60 days' confinement (N.C.G.S. § 15A-1340.4(a)(1)(o) and the nonstatutory aggravating factor that he had been previously convicted of rape. It is defendant's position that since his only prior conviction was for rape, the trial judge "used the same item of evidence [the prior rape conviction] to prove more than one factor in aggravation" in violation of N.C.G.S. § 15A-1340.4(a)(1). We agree, and hold that the trial judge erred in finding both aggravating factors when each of them was premised upon defendant's prior rape conviction.

No. 83CRS31804—First-Degree Rape—No error.

No. 83CRS31805—First-Degree Sexual Offense—No error.

No. 83CRS31733—First-Degree Kidnapping—New trial.

Justice EXUM dissenting in part.

I dissent from so much of the majority decision which holds that defendant was not entitled to an instruction on the lesser included offense of attempted rape. The majority correctly states the law and the evidence bearing on this issue. The majority errs, however, in concluding that the victim's testimony is not equivocal on the question of penetration. To me, her testimony on this

issue is the epitome of equivocation. It is enough to carry the issue to the jury; but it leaves the issue in enough doubt that the jury should have been permitted to consider as an alternative verdict defendant's guilt of attempted rape on the theory that there was, in fact, no penetration.

I, therefore, vote for a new trial in the rape case for failure of the trial court to submit the lesser included offense of attempted rape.