IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-445

Filed: 15 December 2020

Wake County, Nos. 15 CRS 219606, 18 CRS 1522

STATE OF NORTH CAROLINA

v.

WILLIAM BRANDON COFFEY

Appeal by defendant from judgment entered 17 August 2018 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 3 March 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney Kathryn L. Pomeroy-Carter, for the State*
>
> *Joseph P. Lattimore for defendant-appellant.*

BRYANT, Judge.

On 28 September 2015, defendant William Brandon Coffey was indicted on two counts of sexual offense with a child by an adult, rape of a child, first-degree kidnapping, and two counts taking indecent liberties with a child. At the time of the incident, the victim, Maya[1], was six years old, and defendant was thirty-three years old. The matter was tried before the Honorable A. Graham Shirley, Judge presiding.

---

[1] Throughout the opinion, a pseudonym "Maya" and the word "child" are used interchangeably to protect the identity of the child-victim and for ease of reading.

At trial, the State's evidence tended to show that on 1 September 2015, Maya went with her father to choir practice at their church. Upon arrival, Maya went to the kitchen area to play with the other children. At the same time, the church was also hosting a men's fellowship meeting, which was attended by defendant and his father. The church's video surveillance showed defendant left the men's fellowship meeting two times—the first time for about two minutes, and the next time for about eight minutes. Defendant saw Maya walking to the bathroom and extended his arms to hug and pick her up. Maya thought defendant was a friend of her father's. Another member of the church testified he saw defendant extend his arms toward Maya, pick her up, and hug her. The member testified that he was concerned, stating he "just [] had a feeling something didn't look right." He sought out the assistant pastor to tell him what he saw and asked him if defendant was related to Maya. The assistant pastor didn't know but promised to look into it. Meanwhile, defendant had returned to the meeting but left a second time for much longer.

During that time, defendant saw Maya at the water fountain and told her to take her pants down. After "kissing [her] butt," defendant took Maya into the men's bathroom and told her to take off her pants, underwear, and shirt. Maya testified that defendant "used the part he pees with to [penetrate] the part [she] pee[s] with" and then defendant told her to roll over on her stomach and defendant "put the part that [he] pees with on [Maya's] butt." Maya said she felt poop coming out, and she

also peed on the floor. Maya tried to yell for help, but defendant covered her mouth and nose and told her to "hold on just a little bit longer." Afterwards, defendant "wiped the part he pees with" and left the bathroom. Maya told her father that she had peed on herself. After leaving the church, Maya told her father that defendant had taken her to the bathroom and tried to explain what defendant had done to her. Maya's father immediately returned to the church and talked to the pastor about what had happened. The pastor then called the police.

Maya was taken to the hospital, where a standard rape examination was conducted. A nurse collected vaginal, rectal, and oral smears as well as Maya's clothes and underwear. Maya was also taken to SafeChild, a specialized child advocacy center for abused children. While there, she had a forensic interview, which was videotaped and later introduced into evidence at trial without objection. The church member, who had seen defendant pick up and hug Maya, was asked to identify the man he saw in a photo lineup. The church member identified defendant with 100 percent certainty. Defendant was then arrested and advised of his rights. A search warrant was served to obtain a buccal swab of the inside of defendant's mouth. The swab was sent to the North Carolina State Crime Laboratory and tested, using YSTR DNA ("DNA"), against a semen sample found on Maya's underwear.[2] The DNA profile from the semen on Maya's underwear matched the DNA profile from

---

[2] YSTR DNA testing is a type of autosomal testing for male DNA (Y chromosome).

defendant's buccal swab. At the close of the State's case, the only evidence presented by defendant was the testimony of his father.

A jury convicted defendant on all counts. Defendant was sentenced as follows: 300 to 420 months imprisonment for each count of first-degree sex offense with a child; 300 to 420 months imprisonment for rape of a child; 83 to 112 months imprisonment for first-degree kidnapping; and 19 to 32 months imprisonment for each count of indecent liberties with a child. The sentences were ordered to run consecutive to each other. The trial court ordered defendant to register as a sex offender and that a satellite-based monitoring hearing be conducted upon defendant's release from prison. Defendant entered timely notice of appeal.

---

On appeal, defendant argues the trial court erred by I) denying his motion to dismiss a charge of taking indecent liberties with a child and kidnapping, II) entering judgment on two counts of sexual offense with a child by an adult after instructing the jury on the lesser charge of first-degree sex offense, and instructing the jury on first-degree kidnapping, III) admitting expert witness testimony about DNA profiles and allowing 404(b) evidence of defendant's prior misconduct with another child, and IV) allowing improper cross-examination of defendant's father.

*I*

Defendant first argues the trial court erred by denying his motion to dismiss for indecent liberties with a child and first-degree kidnapping. We disagree.

We review a "trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). In deciding whether to grant a defendant's motion to dismiss, the trial court must consider "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation and quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980) (citations omitted).

### *Indecent Liberties with a Child*

Defendant does not challenge the evidence that resulted in a verdict of taking indecent liberties based on kissing the child. As to the other charge of taking indecent liberties with a child, defendant argues the State did not provide sufficient evidence that defendant acted inappropriately by touching Maya's chest. Specifically, defendant argues that the evidence of defendant placing his hand on Maya's chest was offered for corroborative purposes only. We disagree.

Under N.C. Gen. Stat. § 14-202.1, a defendant can be convicted of taking indecent liberties with a child if: 1) the defendant is at least sixteen years old, 2) the child-victim is under the age of sixteen, and 3) the defendant is at least five years older than the child in question. Additionally, a defendant is guilty of taking indecent liberties with a child under subsection (a)(1) if he "[w]illfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire[.]" N.C. Gen. Stat. § 14-202.1(a)(1) (2019).

In the instant case, Maya testified that defendant removed her clothes and got on top of her in the men's bathroom. She stated defendant touched her and kissed her. The forensic interviewer from SafeChild testified about Maya's videotaped interview at SafeChild. The videotaped interview was introduced into evidence and played for the jury without objection from defendant. During the interview, Maya specifically stated that defendant touched her chest during the assault.

Nevertheless, defendant contends the evidence from Maya's videotaped interview was offered for corroborative purposes only because Maya's testimony at trial never specifically stated that defendant touched her on the chest. As such, according to defendant, the trial court erred by instructing the jury as to indecent liberties based on the videotaped interview. We disagree.

This Court has previously held that statements made by a victim during an interview with a licensed clinical social worker can be used as substantive evidence at trial when the statements were made with the understanding that they would lead to medical diagnosis or treatment and that the statements were reasonably pertinent to diagnosis or treatment. *State v. Thornton*, 158 N.C. App. 645, 649–51, 582 S.E.2d 308, 310–11 (2003) (holding that the videotaped interview of a child-victim's statements to a social worker was properly admitted for substantive purposes under the medical diagnosis or treatment exception to the hearsay rule).

"Rule 803(4) [Statements for Medical Diagnosis or Treatment] requires a two-part inquiry: (1) whether the declarant's statements were made for purposes of medical diagnosis or treatment; and (2) whether the declarant's statements were reasonably pertinent to diagnosis or treatment." *Id*. at 649–50, 582 S.E.2d at 311 (citing *State v. Hinnant*, 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000)).

Here, the videotaped interview was conducted at SafeChild following Maya's sexual assault. The forensic interviewer testified about the standard procedure at SafeChild, which includes conducting a forensic interview and a medical exam for a child-victim's diagnosis. The interviewer testified that prior to an interview with a child-victim, the child-victim is given a tour, so the child knows "[it] is really important for their health, that we are going to talk about today, we need to kind of know what happened, make sure we are telling the truth, and you are going to see

the doctor today for anything that you are worried about with your body." The interviewer further testified that Maya was given a medical exam and was interviewed. During the interview, she specifically described the acts done to her by defendant, including defendant touching her on the chest. According to the witness, "[Maya] offered a number of those kinds of details, where, you know, it just was remarkable."

Given the evidence presented, Maya's videotaped interview was properly admitted under Rule 803(4) as her statements were made for the purposes of medical diagnosis or treatment, and the statements were reasonably pertinent to diagnosis or treatment. Further, while not distinguishing specific videos, the trial court instructed the jury without objection that the videos, including the forensic video at issue here, could be considered as substantive evidence. The evidence was sufficient to support denial of the motion to dismiss the challenged charge of taking indecent liberties with a child. Defendant's argument is overruled.

### *First-degree Kidnapping*

As to the first-degree kidnapping charge, defendant contends there was insufficient evidence to support that defendant forcibly removed Maya to the bathroom. We disagree.

Under N.C. Gen. Stat. § 14-39, any person who unlawfully confines, restrains, retains or removes a person under the age of sixteen from one place to another

without the consent of a parent or legal guardian, will be guilty of kidnapping if the confinement, restraint or removal is "for the purpose of . . . [f]acilitating the commission of any felony" or "[d]oing serious bodily harm to or terrorizing the person so confined, restrained or removed[.]" Further, "[i]f the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first[-]degree[.]" N.C. Gen. Stat. § 14-39(b) (2019).

"Kidnapping can be accomplished either by actual force or by fraud or trickery which induce[s] the victim to be removed to a place other than where the victim intended to be." *State v. Williams*, 201 N.C. App. 161, 171–72, 689 S.E.2d 412, 419 (2009) (alterations in original) (citation and quotation marks omitted)). "Asportation of a rape victim is sufficient to support a charge of kidnapping if the defendant could have perpetrated the offense when he first threatened the victim, and instead, took the victim to a more secluded area to prevent others from witnessing or hindering the rape." *State v. Walker*, 84 N.C. App. 540, 543, 353 S.E.2d 245, 247 (1987) (citations omitted).

In the instant case, Maya testified that when she left the kitchen area to get some water, she saw defendant standing near the water fountain. At the water foundation, Maya testified that defendant asked her to take her pants down and kissed her bottom. Defendant then "took [her] to the men's bathroom," where he

completed the sexual assault previously described. Thus, defendant's contention, that the evidence neither shows that he used actual force nor fraud or trickery to remove Maya, is without merit. Prior to the sexual assault, Maya had interacted with defendant, whom she thought was a friend of her father when he hugged her. Defendant began his sexual assault of Maya at the water fountain, where he had her pull down her pants and kissed her butt, and where he could have continued his assault, but instead *took* her to a secluded place, the men's bathroom, to further enable his ability to complete his sexual acts out of the presence of potential witnesses. The asportation of Maya from the water fountain to the men's bathroom in order to further sexually assault her was sufficient to support that element of the kidnapping charge. *See id.*

## II

Defendant also raises arguments regarding his convictions of first-degree kidnapping and sexual offense with a child, arguing that the trial court erred by instructing on first-degree kidnapping and by failing to instruct on sexual offense with a child by an adult. Having not objected at trial to the issues raised on appeal regarding the jury instructions, we review each of defendant's arguments for plain error only.

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723

S.E.2d 326, 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id*. (citation and quotation marks omitted).

<u>*First-Degree Kidnapping Jury Instructions*</u>

Defendant argues the trial court committed plain error by instructing the jury on first-degree kidnapping. After careful consideration, we find no prejudicial error.

The first-degree kidnapping indictment returned against defendant by the Wake County grand jury charged as follows:

> [That] defendant named above unlawfully, willfully, and feloniously did confine, restrain or remove from one place to another [Maya], a child under the age of 16, without consent of a parent or legal custodian. The kidnapping was done in furtherance of a felony or for the purpose of committing a sexual assault. [] *[D]efendant also sexually assaulted [Maya]* []. This act was done in violation of NCGS § 14-39.

(emphasis added). The evidence at trial was consistent with the allegations in the indictment. The evidence showed that the act elevating the offense to first-degree kidnapping was that Maya was sexually assaulted. However, the trial court instructed the jury in pertinent part as follows:

> [T]he defendant has been charged with first[-]degree kidnapping. For you to find the defendant guilty of this offense, the state must prove five things beyond a reasonable doubt.

> First, that the defendant unlawfully removed a person from one place to another;
>
> Second, that the person had not reached her 16th birthday and her parent did not consent to this removal;
>
> Third, that the defendant removed that person for the purpose of facilitating the defendant's commission of rape or a sex offense. . . .
>
> Fourth, that this removal was a separate and complete act, independent and apart from the rape or sex offense;
>
> *And fifth, that the person was not released by the defendant in a safe place.*

(emphasis added).

By instructing the jury (as to the fifth element) that Maya was not released in a safe place and failing to instruct the jury on the element of whether Maya had been sexually assaulted, there was a variance between the language in the indictment and the language in the jury instruction. Such a variance is usually considered prejudicial error. However, upon plain error review of the entire case, it is not probable that the jury would have reached a different result if given the correct instruction. *See id.* ("[A] defendant *must* establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." (emphasis added)).

Defendant argues that *State v. Brown*, 312 N.C. 237, 321 S.E.2d 856 (1984), is factually indistinguishable, and thus, defendant is entitled to a new trial on the kidnapping charge. However, to the contrary, *Brown* is distinguishable. In *Brown*,

our Supreme Court found there was a variance between the first-degree kidnapping indictment and the jury instructions. The indictment alleged that the victim was restrained for the purpose of facilitating "attempted rape" and that defendant did not release the victim in a safe place. *Id.* at 247, 321 S.E.2d at 862. The jury instructions stated that the victim was restrained for the purpose of "terrorizing her" and "was sexually assaulted." *Id.* In addition to the trial judge erroneously "instruct[ing] on different theories for both the crime of kidnapping and the basis for first[-]degree kidnapping than were alleged in the indictment[,]" the erroneous instruction was repeated more than once. *Id.* Further, the evidence at trial did not support the trial court's instructions. *Id.* at 248, 321 S.E.2d at 862–63.

Notwithstanding the holding in *Brown*, the instant case is more analogous to *State v. Tirado*, 358 N.C. 551, 599 S.E.2d 515 (2004), where our Supreme Court held the jury instructions setting out a theory of a kidnapping charge not included in the indictment was erroneous. In *Tirado*, the evidence supported both the theory set out in the indictment and the additional theory set out in the trial court's instructions. *Id.* at 574–76, 599 S.E.2d at 532–33. Accordingly, the Supreme Court concluded that "a different result would not have been reached had the trial court instructed only on the purpose charged in the indictment, and that the error in the instructions was not prejudicial." *Id.* at 576, 599 S.E.2d at 533.

Here, as in *Tirado*, the evidence at trial supported both the theory in the indictment and the additional theory set out in the trial court's instructions. While it was error for the trial court to instruct on the fifth element—that the victim was not released in a safe place—as opposed to the language of the indictment—that the victim was also sexually assaulted—the record, as a whole, makes it clear the jury found that defendant had sexually assaulted Maya. The evidence also supported that Maya was not left in a safe place—specifically, she was left by defendant on the floor of the men's bathroom having urinated and defecated on herself following the sexual assault by defendant. It is unlikely a different result would have been reached had the trial court properly instructed the jury on the charged theory in the indictment. Thus, no prejudicial error existed in the jury instructions.

### *Sexual Offense Jury Instructions*

Defendant argues the trial court erred by entering judgment on sexual offense with a child by an adult after instructing the jury on first-degree sex offense, a lesser offense. We agree and find this to be prejudicial error.

To convict for sexual offense with a child in violation of N.C. Gen. Stat. § 14-27.28, formerly codified under N.C. Gen. Stat. § 14-27.4A, "[a] person is guilty . . . if the person is at least 18 years of age and engages in a sexual act with a victim who is a child under the age of 13 years." In contrast, a conviction for first-degree sexual offense under N.C. Gen. Stat. § 14-27.29, formerly codified as N.C. Gen. Stat. § 14-

27.4(a)(1), can be obtained "if the person engages in a sexual act with a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim."

> While both offenses require the State to prove that the defendant engaged in a sexual act with a victim who was a child under the age of 13 years, sexual offense with a child . . . has a greater requirement with respect to the age of a defendant at the time of the act. For first[-]degree sexual offense, . . . the State must prove only that the defendant was at least 12 years old and at least four years older than the victim, whereas for [sexual offense with a child], the State must prove that the defendant was at least 18 years old.

*State v. Hicks*, 239 N.C. App. 396, 406–07, 768 S.E.2d 373, 379 (2015). "It is well settled in North Carolina that when a defendant is indicted for a criminal offense[,] he may be convicted of the offense charged or of a lesser included offense when the greater offense in the bill includes all the essential elements of the lesser offense." *State v. Snead*, 295 N.C. 615, 622, 247 S.E.2d 893, 897 (1978).

Here, defendant was indicted for sexual offense with a child. However, rather than instruct the jury on the indicted offense—sexual offense with a child by an adult—the trial court instructed the jury on the lesser offense—first-degree sexual offense. The trial court failed to submit to the jury the additional element necessary for sexual offense with a child by an adult: that defendant was at least eighteen years old, at the time he committed the offense.

We note the only distinction between sexual offense with a child and first-degree sexual offense is the element of establishing defendant's age. There was evidence in the record to show that defendant was thirty-three years old when he committed a sexual act on six-year-old Maya. Additionally, defendant's conviction of rape of a child (requiring that the defendant be at least 18 years of age) following the same trial session presumably suggest that the jury found the State's evidence sufficient to prove he was at least eighteen years of age.

Nevertheless, in other circumstances, the failure to instruct on the additional element, standing alone, would not have a prejudicial impact on a defendant's verdict had that defendant been sentenced to first-degree sexual offense and the evidence was sufficient to support a conviction for this lesser offense. Defendant was sentenced as a Level II offender for sexual offense with a child by an adult, a Class B1 felony, punishable by an active sentence no less than 300 months. *See* N.C.G.S. § 14-27.28(b). The lesser included offense of first-degree sexual offense, also a Class B1 felony, is punishable by 221 to 276 months in the presumptive range.[3]

Here, as with the kidnapping instructions, we consider the entire record and find that defendant has demonstrated prejudicial error. The judgment in defendant's case, although consistent with the verdict, impermissibly sentenced defendant to a

---

[3] For sentencing purposes, the length of the sentence in North Carolina is based on a defendant's prior criminal history. Defendant was Level II prior record level offender with 4 prior record points. *See* N.C.G.S. § 15A-1340.17(c) (2019).

greater offense than set forth in the instructions. The jury instruction clearly outlined the lesser included offense of first-degree sexual offense, and thus, it was improper for the trial court to enter judgment for two counts of sexual offense with a child. Accordingly, on this record, we must vacate defendant's conviction for sexual offense with a child by an adult and remand for resentencing on the first-degree sexual offense.

*III*

Defendant raises issues on appeal involving the admission of evidence—particularly contesting the expert witness testimony regarding DNA testing on Maya's underwear and evidence of defendant's prior bad acts. Because defendant did not properly preserve his challenges to the admission of this evidence, we review for plain error only. N.C.R. App. P. 10(a)(4); *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

### *Admission of expert witness testimony*

Defendant argues the trial court committed plain error by admitting expert witness testimony regarding the DNA profile from Maya's underwear, which matched defendant, contending the trial court lacked a sufficient foundation to satisfy the requirements of Rule 702(a)(3). We disagree.

Under the North Carolina Rules of Evidence, an expert witness may testify in the form of an opinion if: (1) the testimony is based upon sufficient facts or data, (2)

the testimony is the product of reliable principles and methods, and (3) the witness

has applied the principles and methods reliably to the facts of the case. N.C. Gen.

Stat. § 8C-1, Rule 702. The expert must "[have] knowledge of facts which would be

helpful to a jury in reaching a decision[.]" *State v. Fletcher*, 322 N.C. 415, 422, 368

S.E.2d 633, 637 (1988).

> Subsections (1)-(3) [of Rule 702] compose the three-pronged
> reliability test[.] The precise nature of the reliability
> inquiry will vary from case to case depending on the nature
> of the proposed testimony[.] [While] the trial court has
> discretion in determining how to address the three prongs
> . . . [,] [t]he primary focus should be the reliability of the
> witness's principles and methodology, not . . . the
> conclusions that they generate[.]

*State v. McPhaul*, 256 N.C. App. 303, 313, 808 S.E.2d 294, 303 (2017) (alterations in

original) (citations omitted and quotation marks omitted).

"[A]n expert witness must be able to explain not only the abstract methodology

underlying the witness's opinion, but also that the witness reliably applied that

methodology to the facts of the case." *Id.* at 316, 808 S.E.2d at 305; *see also State v.*

*Gray*, 259 N.C. App. 351, 356–57, 815 S.E.2d 736, 740–41 (2018) (holding that a

proper foundation was established at the time the challenged expert provided her

opinion because her testimony demonstrated that she was a qualified expert, with

over 20 years of experience in the field, and that her opinion was the product of

reliable principles and methods which she reliably applied to the facts of the case).

In the instant case, Agent Meyer, a qualified expert in the field of forensics and an employee at the North Carolina State Crime Lab, testified to her qualifications in the area of DNA analysis as well as her training and experience in gathering evidence for DNA profiles. In particular, Agent Meyer testified to the process of extracting DNA from defendant's buccal swab by performing autosomal testing, which is a form of testing "exclusively for male DNA." Agent Meyer then described the four-step process to extract DNA from defendant:

> [MEYER]: YSTRs are sort of another class of the autosomal testing[.]. . . YSTRs are typically used in cases of alleged sexual assault since they don't amplify the female DNA component on items such as body swabs, vaginal, rectal or oral swab and the female component will usually be an overwhelming abundance compared to the male component. And YSTRs can kind of – they will ignore the female component and just focus strictly on the male aspects of what may be present in that sample. And that is primarily what YSTR is used for, is to screen out the female portion of the sample.
>
> . . . .
>
> So compared to regular autosomal DNA, the first couple of steps where you extract DNA from an item where we use a series of chemicals to remove the DNA from the item you are testing, the quantitation step which is where you get an estimate of how much DNA you are able to obtain, those two steps are exactly the same no matter which type of testing is being performed. The difference comes in the third step which is what we refer to as amplification, and that is where we make millions of copies of specific areas on the DNA that we want to look at because those areas will differ from person to person. Therefore, they are the most informative.

. . . .

So after those areas have been amplified, we move them on to an instrument where it can separate out the different areas that we test and it produces a graph that we can look at and make visual comparisons between the patterns observed on the evidence and those that are observed from the standards.

. . . .

[THE STATE]: These procedures that you are talking about for YSTR, have they been widely accepted as valid in the scientific community?

[MEYER]: Yes.

[THE STATE]: Did you use those widely accepted procedures in analyzing the evidence from this case?

[MEYER]: Yes.

[THE STATE]: Were you qualified to do YSTR testing?

[MEYER]: Yes. I was proficiency tested, and in addition to that, I performed the in-house validation for the system that we are currently using for YSTR.

. . . .

[THE STATE]: Did you receive evidence in the case involving [ ] defendant . . . and the victim, [Maya]?

[MEYER]: Yes.

. . . .

> [MEYER]: I performed YSTR analysis on both the buccal sample from [defendant] as well as the extract that [was] generated from [Maya's] underwear previously.
>
> . . . .
>
> [THE STATE]: Agent Meyer, when you did these procedures for this case, what were your results?
>
> . . . .
>
> [MEYERS]: The YSTR DNA profile obtained from the cutting from the underpants matche[d] the YSTR DNA profile obtained from [defendant].

Based on the testimony above, a proper foundation was laid to admit Agent Meyer's expert testimony regarding the DNA testing of Maya's underwear. Agent Meyer thoroughly explained the methods and procedures of performing autosomal testing and analyzed defendant's DNA sample following those procedures. That particular method of testing has been accepted as valid within the scientific community and is a standard practice within the state crime lab. Thus, her testimony was sufficient to satisfy Rule 702(a)(3). Defendant's argument is overruled.

### *Admission of Defendant's Prior Bad Acts*

Defendant next argues it was error to allow 404(b) evidence that defendant engaged in misconduct with a prior victim, Dana.[4] Specifically, defendant argues that because the incident with Dana was unrelated to the incident with Maya, the trial court should not have allowed the prior bad acts evidence. Although defendant

---

[4] A pseudonym is used to protect the identity of the victim witness.

filed a motion in limine to exclude the 404(b) evidence, which motion was denied, he did not renew his objection to the admission of evidence, and now asks that we review this argument for plain error. N.C.R. App. P. 10(a)(4); *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

Under N.C. Gen. Stat. § 8C-1, Rule 404, evidence of other crimes may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." This rule is "guided by two constraints: similarity and temporal proximity." *State v. Johnson,* 145 N.C. App. 51, 58, 549 S.E.2d 574, 579 (2001) (citation and quotation marks omitted).

> [F]or evidence of defendant's prior crimes or bad acts to be admissible to show the identity of the defendant as the perpetrator of the crime for which he is being tried, there must be some . . . particularly similar acts that would indicate that the same person committed both crimes, . . . [and while t]he similarities need not be unique and bizarre, they must tend to support a reasonable inference that the same person committed both the earlier and later acts.

*State v. Gary*, 348 N.C. 510, 521, 501 S.E.2d 57, 65 (1998) (internal citation and quotation marks omitted); *see also State v. Bagley*, 321 N.C. 201, 207–08, 362 S.E.2d 244, 248 (1987) (holding that in a first-degree sexual offense case, evidence that defendant attempted a remarkably, odd and strikingly similar *modus operandi* some ten weeks after his attack on victim was relevant and admissible as tending to prove defendant's modus operandi, motive, intent, preparation, and plan).

In the instant case, the trial court conducted a *voir dire* hearing on defendant's 404(b) motion in limine. Dana testified at the hearing that on 30 May 2019, after leaving a pool at her apartment complex, defendant approached her. Dana was *nine years old* at that time. Defendant pulled down Dana's pants and touched her bottom. Defendant then grabbed Dana's wrist and started pulling her. Defendant pulled Dana to the other side of her building and put her on the stairs. Defendant took off her shoe and kissed her foot. As Dana began to scream, defendant slapped her and told her to be quiet. At the hearing, Dana identified defendant as her assailant.

The trial court's findings at the *voir dire* hearing reflect that Maya and Dana were young females, similar in age. The findings also established the following: both females were strangers to defendant; they were separated from a group and taken to a more secluded location; they were touched improperly beginning with the buttocks; and they were told to be quiet during the assault. The trial court found the facts similar enough in both cases to be admissible under Rule 404(b), and Dana was allowed to testify before the jury. Dana's testimony before the jury was substantially the same as at the hearing on the motion to suppress.

We note the trial court gave a limiting instruction to the jury that Dana's testimony was received "solely for the purpose of showing the identity of who committed the crime . . . or that there existed in the mind of [ ] defendant a plan, scheme, system or design and involving the crime charged in this case."

Defendant argues there were significant differences between the two incidents such that Dana's testimony should have been excluded. We disagree. In the instant case, Maya, a six-year-old child, was approached by defendant at the water fountain after leaving the kitchen where she was playing with other children. Similarly, Dana, a nine-year-old child, was approached by defendant after she separated from her group of friends at a pool. In both cases, defendant first pulled down the victims' pants and touched their bottoms. Defendant also moved both victims to secluded locations in an attempt to continue his sexual assault. Further, defendant's use of force was similar in both incidents: in one instance, he used his hand to slap the victim's face, and in the other, he put his hand over the victim's mouth to quiet her.

In sum, defendant's actions toward these young children were similar enough that the trial court did not err in admitting evidence of prior bad acts under Rule 404(b). Defendant's argument is overruled.

*IV*

Defendant argues the trial court erred by allowing the cross-examination of defendant's father. Specifically, defendant contends the State improperly elicited testimony from defendant's father that was not relevant to defendant's trial. We disagree.

"The admissibility of evidence is governed by a threshold inquiry into its relevance. In order to be relevant, the evidence must have a logical tendency to prove

any fact that is of consequence in the case being litigated." *State v. Griffin*, 136 N.C. App. 531, 550, 525 S.E.2d 793, 806 (2000) (internal citation and quotation marks omitted). "Whether [the] evidence is relevant is a question of law, thus we review the trial court's admission of the evidence *de novo*. Defendant bears the burden of showing that the evidence was erroneously admitted and that he was prejudiced by the error." *State v. Kirby*, 206 N.C. App. 446, 456, 697 S.E.2d 496, 503 (2010) (internal citation omitted).

Under N.C. Gen. Stat. § 8C-1, Rule 611, "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." However, "[t]he scope of cross-examination is limited to those matters that are relevant issues before the jury." *State v. Hosey*, 79 N.C. App. 196, 202, 339 S.E.2d 414, 417 (1986). Evidence that is not relevant is inadmissible. N.C. Gen. Stat. § 8C-1, Rule 402.

Here, on direct examination, defendant's father generally testified regarding his relationship with defendant, defendant's mental capacity, and defendant's current living arrangement. He testified about how defendant needed help with day-to-day activities because "he was lacking" the ability to do things for himself without specific instructions. Defendant's father stated that he was "like a chaperone" to the extent that defendant needed to be watched, so "nobody [took] advantage of him."

Thereafter, on cross-examination, the State asked defendant's father questions about his supervision of defendant at the church on the day that the events took place. The following exchange occurred:

> Q. You said that you kind of have to watch him, is that right?
>
> A. Yes.
>
> . . . .
>
> Q. Were you not told by the church that you were supposed to be watching him and not let him alone near children?
>
> A. I know we had an agreement that we had to take to saying that he could come to that church.
>
> . . . .
>
> A. *We had to get a permission slip signed and take to . . . the parole officer in Raleigh[,] saying that he could go to that church unless someone had a problem with it, and then we would be asked to leave, not continue to come to that church. As long as it was all right with the church, he could go to church.*
>
> Q. Did you notify all these parents who were bringing their children into this church?
>
> A. No. Only I had the secretary . . . . I think she set it up. She was the go between. We had to get permission slip from the pastor or from the board to take back to the parole officer to make sure we had permission to go to the church. And out of the hundreds of -- a couple hundred people that go to that church, we didn't go around to each and every last one saying, Watch my son around your kid, watch my son around your kid.

Q. Did you watch your son walk out of the room?

A. Yes.

Q. You knew he was out of the room by himself?

A. Yes.

Q. You knew that there were children in the kitchen?

A. I didn't pay any attention to that.

. . . .

Q. You didn't hear the children running up and down the hallway?

A. Yes, running up and down the hallway making a ruckus, yes, but in the kitchen, I don't know.

Q. So you knew your son had walked out of the room by himself and that there were children in there and you didn't do anything?

A. We have been going to that church. There are children in the service. We had been going to that church to the fellowship meetings. Okay. There are, I guess, children that come with their parents. We have been to functions at the Dream Center where there have been parents and children. I can't go up to every last one and say, Watch out for my son. And you better watch him. He is dangerous. Which I don't think he is dangerous, but is that what you want me to do? I don't know. You know. It's unreasonable.

(emphasis added). Defendant argues that whether or not defendant's father warned the children at the church about defendant had no bearing on whether defendant committed the offenses defendant was charged with. However, the questions on cross-examination elicited relevant testimony and were well within the scope of

defendant's father's direct testimony that defendant needed frequent supervision for basic activities. Clearly, defendant was on parole for some type of concerning misconduct, which required permission for defendant to attend the church. Because the cross-examination was relevant and related to the issues at trial, defendant was not prejudiced by the admission of his father's testimony.

NO ERROR IN PART; VACATED AND REMANDED IN PART.

Judge STROUD concurs.

Judge MURPHY concurs in part, concurs in result only in part, and dissents in part with separate opinion.

MURPHY, Judge, concurring in part, concurring in result only in part, and dissenting in part.

While I concur in parts of the Majority, I respectfully disagree with some of the results reached by the Majority and portions of its analysis as more thoroughly discussed, below.

## A. Indecent Liberties with a Child[5]

Defendant argues there was insufficient evidence to support his conviction for indecent liberties with a child since the video evidence provided by the State on this issue was admitted for corroborative purposes only. The Majority disagrees and concludes video evidence of Maya's out-of-court statements to a forensic examiner was submitted as substantive evidence and supported Defendant's conviction for indecent liberties with a child. I concur in result, but write separately to fully evaluate Defendant's argument as clarified in his reply brief.

Defendant argues the trial court provided a more specific jury instruction regarding prior statements, and as a result the video evidence of Maya's out-of-court statements were admitted solely for corroborative purposes. We have previously observed, "[o]ur system of justice is based upon the assumption that trial jurors are women and men of character and of sufficient intelligence to fully understand and

---

[5] This section corresponds with the Majority Part I: Indecent Liberties with a Child. *Supra* at 5-8.

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

comply with the instructions of the court, and are presumed to have done so." *State v. Hauser*, 844 S.E.2d 319, 322 (N.C. Ct. App. 2020) (quoting *State v. Hines*, 131 N.C. App. 457, 462, 508 S.E.2d 310, 314 (1998)). When jurors are instructed on the general purpose of evidence which is followed by more specific instructions, they are presumed to understand and apply the more specific instructions provided by the trial court.

While Defendant's argument is generally correct, it does not apply to this case. Here, the trial court provided the following jury instructions in part:

> Videos were introduced as evidence in this case. These videos may be considered by you as evidence of facts they illustrate or show.
>
> . . .
>
> Evidence has been received tending to show that at an earlier time a witness made a statement which may conflict or be consistent with the testimony of the witness at this trial. You must not consider such earlier statement as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial.

In addition to Maya's forensic interview, there were two other instances where prior statements were introduced into evidence. After these other prior statements were introduced, the trial court gave limiting instructions that substantially tracked the North Carolina pattern jury instruction, which reads:

> Evidence has been received tending to show that at an earlier time a witness made a statement which may conflict or be consistent with the testimony of the witness at this trial. You must not consider such earlier statement as

2

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

> evidence of the truth of what was said at that earlier time because it was not made under oath at this trial. If you believe the earlier statement was made, and that it conflicts or is consistent with the testimony of the witness at this trial, you may consider this, and all other facts and circumstances bearing upon the witness's truthfulness, in deciding whether you will believe or disbelieve the witness's testimony.

N.C.P.I.—CRIM. 105.20. Conversely, there was no limiting instruction requested or provided by the trial court regarding the introduction of Maya's forensic interview.

Given these other instances of prior statements and the limiting instructions which followed them, it is clear the trial court was referring to these other prior statements in its jury instruction on corroborative evidence. Moreover, in addition to the jury instruction regarding the substantive use of video evidence, the absence of a limiting instruction regarding the forensic interview shows the trial court did not limit its substantive use. While Defendant's argument has merit, the specifics of this case do not entitle him to the outcome for which he advocates.

## B. Sexual Offense Jury Instructions[6]

The Majority properly finds the trial court erred by entering judgment on sexual offense with a child by an adult after instructing the jury on first-degree sex offense, a lesser offense. However, the Majority concludes this instructional error amounts to plain error. I disagree with this conclusion.

---

[6] This section corresponds with the Majority Part II: Sexual Offense Jury Instructions. *Supra* at 14-17.

3

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

"[P]lain error is to be applied cautiously and only in the exceptional case, [and] the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]" *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citation, alteration, and quotation marks omitted). Under the plain error standard of review, Defendant must first "demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, [Defendant] must establish prejudice—that, after examination of the *entire record*, the error had a probable impact on the jury's finding that [Defendant] was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (internal citation and quotation marks omitted) (emphasis added). Following *Lawrence*, plain error review requires us to look at the entire record on appeal.

As observed by the Majority, a person can be convicted of sexual offense with a child in violation of N.C.G.S. § 14-27.28[7] "if the person is at least 18 years of age and engages in a sexual act with a victim who is a child under the age of 13 years." *Supra* at 14. Looking at the entire Record, Defendant's conviction of rape of a child required the jury to find beyond a reasonable doubt "that at the time of the acts alleged, [D]efendant was at least 18 years of age." The rape of a child element satisfies our inquiry on plain error review and we must conclude the instructional error did not have any impact on the verdict much less a "probable impact."

---

[7] Formerly codified under N.C.G.S. § 14-27.4A.

4

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

I agree the trial court erred in instructing the jury, however, since the jury found beyond a reasonable doubt Defendant was at least 18 years old in another portion of its verdict and all the charges against Defendant occurred on the same date, there was no plain error.

### C. First-Degree Kidnapping Jury Instructions[8]

The Majority finds the trial court did not commit plain error when it instructed the jury on a theory not alleged in the indictment because the evidence at trial supported both the theory in the indictment and the additional theory set out in the trial court's instructions. While I agree with the Majority that Defendant did not suffer plain error, I dissent from the Majority's analysis of this issue. Further, I dissent from the Majority's outcome of this issue as we must remand for the trial court to arrest judgment on first-degree kidnapping and enter a sentence on second-degree kidnapping.

**1. Erroneous Instruction**

In finding the variance did not amount to plain error, the Majority distinguishes the current case from *State v. Brown,* 312 N.C. 237, 321 S.E.2d 856 (1984) and relies on *State v. Tirado,* 358 N.C. 551, 599 S.E.2d 515 (2004). I find the Majority's reliance on *Tirado* is misplaced.

---

[8] This section corresponds with the Majority Part II: First-Degree Kidnapping Jury Instructions. *Supra* at 11-14.

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

*Tirado* involved the kidnapping of three victims, Tracy Lambert, Susan Moore, and Debra Cheeseborough by two defendants. *Tirado*, 358 N.C. at 559, 599 S.E.2d at 523. The first indictment alleged the defendants "confined, restrained, and removed [Lambert and Moore] for the purpose of 'facilitating the commission of a felony.'" *Id.* at 575, 599 S.E.2d at 532. The trial court instructed the jury it could find the defendants guilty if it found each defendant "'removed' Lambert or Moore for the purpose of 'facilitating the defendant's or another person's commission of robbery with a firearm or doing serious bodily injury to the person so removed.'" *Id.* The second indictment alleged "each defendant confined, restrained, and removed [Cheeseborough] for the 'purpose of doing serious bodily injury to her.'" *Id.* The trial court instructed the jury that it could find the defendants guilty if it found each defendant "removed the victim for the purpose of 'facilitating . . . commission of robbery with a firearm or for the purpose of doing serious bodily injury.'" *Id.*

The kidnapping instruction regarding Lambert and Moore was more specific than the indictment language, and the kidnapping instruction regarding Cheeseborough included an additional purpose to the one alleged in the indictment. Both jury instructions involved *additional* language beyond the indictment. The issue in *Tirado* was one of mere surplusage and it is not applicable to the facts of this case.

Our kidnapping statute provides:

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> . . .
>
> (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; []
>
> . . .
>
> (b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

N.C.G.S. § 14-39 (2019). The first-degree kidnapping indictment here charged the following:

> [D]efendant named above unlawfully, willfully, and feloniously did confine, restrain or remove from one place to another [Maya], a child under the age of 16, without the consent of a parent or legal custodian. The kidnapping was done in furtherance of a felony or for the purpose of committing a sexual assault. [] *[D]efendant also sexually assaulted [Maya]* []. This act was done in violation of [N.C.G.S.] § 14-39.

(Emphasis added). However, the jury was instructed:

7

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

> [D]efendant has been charged with first degree kidnapping. For you to find the [D]efendant guilty of this offense, the state most prove five things beyond a reasonable doubt. First, that the [D]efendant unlawfully removed a person from one place to another; Second, that the person had not reached her 16th birthday and her parent did not consent to this removal; Third, that the [D]efendant removed that person for the purpose of facilitating the [D]efendant's commission of rape or a sex offense. A sex offense includes anal intercourse, which I have previously defined for you, and anilingus, which is the touching by the lips or tongue of one person and the anus of another; Fourth, that this removal was a separate and complete act, independent and apart from the rape or sex offense; And fifth, *that the person was not released by the [D]efendant in a safe place.*

(Emphasis added). Here, the first-degree kidnapping indictment alleged "Defendant also sexually assaulted [Maya] []." This language was not included in the jury instruction, and the jury was charged with finding Defendant's guilt on a completely separate element not alleged by the Grand Jury in its indictment, "that the person was not released by the [D]efendant in a safe place." Unlike *Tirado*, where there was an instruction on the indicted charge plus surplusage, the trial court here gave an instruction only on a theory not alleged in the indictment. I find *Brown* more analogous to these facts.

Rather than a surplusage issue, *Brown* involved instructions on completely distinct theories from those alleged in the indictment. *Brown*, 312 N.C. at 247, 321 S.E.2d at 862. In *Brown*, the indictment provided the theory of kidnapping was "unlawfully removing [the victim] from one place to another and confining and

8

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

restraining [the victim] for the purpose of facilitating the commission of . . . attempted rape[,]" and the "defendant did not release the victim in a safe place." *Id.* However, the trial court instructed the jury it could find the defendant guilty of first-degree kidnapping if he "removed, restrained and confined the victim for the purpose of terrorizing her" and if he sexually assaulted the victim. *Id.* (internal quotation marks omitted). In finding plain error, our Supreme Court noted it "has consistently held that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon a theory not supported by the bill of indictment." *Id.* at 248, 321 S.E.2d at 863 (citing *State v. Taylor*, 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980); *State v. Dammons*, 293 N.C. 263, 272, 237 S.E.2d 834, 840-41 (1977)).

Here, the trial court permitted the jury to convict Defendant upon a theory not alleged in the indictment. Under *Brown*, the variance here constitutes error by the trial court.

**2. Plain Error**

The Majority concludes this erroneous instruction does not amount to plain error because the evidence at trial supported both the theory in the indictment and the theory instructed to the jury. I agree with its conclusion of no plain error, but dissent from the Majority's reasoning and the eventual result as discussed in section 3. Double Jeopardy, below. While I find the trial court erroneously instructed the jury on a theory not alleged in the indictment, under the Record here the error did not amount to plain error as the jury found the elements elsewhere in the verdict.

9

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

In *State v. Harding*, the trial court gave a jury instruction that included the indicted language and additional language. *State v. Harding*, 258 N.C. App. 306, 313, 813 S.E.2d 254, 260, *writ denied, review denied*, 371 N.C. 450, 817 S.E.2d 205 (2018). The first-degree kidnapping indictment provided the element of "sexual assault," while the jury instruction provided "it could find [the] defendant guilty if it found 'the [victim] was not released by the defendant in a safe place and/or had been sexually assaulted and/or had been seriously injured.'" *Id.* at 313, 813 S.E.2d at 260. In addition to this instruction, the jury was provided a special verdict sheet with all three elements listed. On the verdict sheet "the jury indicated it found [the] defendant guilty of first-degree kidnapping based on each individual . . . element." *Id.* We found the erroneous instruction did not amount to plain error because "[t]he State presented compelling evidence to support the . . . element of not released in a safe place, and the jury separately found [the] defendant guilty of first-degree kidnapping based on *all* three . . . elements." *Id.* (emphasis added).

Here, the issue before us now becomes whether the jury found the indicted language not provided in the jury instruction elsewhere in its verdict. All the elements of the first-degree kidnapping indictment and the first-degree kidnapping jury instruction were the same apart from the fifth element which elevates the kidnapping charge from second-degree kidnapping to first-degree kidnapping.

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

Under the kidnapping indictment the final element alleged for the purposes of N.C.G.S. § 14-39(b) is, "[D]efendant also sexually assaulted [Maya] []." However, the jury was instructed it could find Defendant guilty of first-degree kidnapping if it found "that the person was not released by [D]efendant in a safe place." The element alleged in the indictment did not substantially follow the element instructed to the jury. However, this does not amount to plain error if the entirety of the Record discloses the jury found beyond a reasonable doubt Maya was sexually assaulted.

In North Carolina, sexual assault includes sexual offenses and rape. *See State v. Mason*, 317 N.C. 283, 292, 345 S.E.2d 195, 200 (1986) (finding "rape [was] the sexual assault used to elevate kidnapping to first degree."); *see also State v. Freeland*, 316 N.C. 13, 21, 340 S.E.2d 35, 39 (1986) ("[I]n finding [the] defendant guilty of first degree kidnapping the jury must have relied on the rape or sexual offense to satisfy the sexual assault element."). We have also held that it includes taking indecent liberties with a child. *See State v. Stinson*, 127 N.C. App. 252, 257, 489 S.E.2d 182, 186 (1997). The jury found Defendant guilty on two counts of first-degree sexual offense, rape of a child, and two counts of indecent liberties with a child. As the jury found Defendant guilty beyond a reasonable doubt of offenses constituting sexual assault for first-degree kidnapping, there is evidence from the jury's verdict it found beyond a reasonable doubt Maya was sexually assaulted.

11

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

In reviewing the entire Record, the jury found Defendant guilty beyond a reasonable doubt of each indicted element of first-degree kidnapping as alleged by the Grand Jury. Defendant has failed to show this instructional error "had a probable impact on the jury's finding that [he] was guilty" of first-degree kidnapping. *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (quotation marks omitted).

## 3. Double Jeopardy

While I find this instructional error did not have a probable impact on the jury's verdict, it did impact Defendant's sentencing. Had Defendant been charged and subsequently sentenced based on the language provided in the first-degree kidnapping indictment, he would have been placed in double jeopardy by sentencing him for both first-degree kidnapping and the underlying sexual assault that was an element of the first-degree kidnapping charge.

Under N.C.G.S. § 14-39, the offense of first-degree kidnapping requires "the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted[.]" N.C.G.S. § 14-39(b) (2019). Our Supreme Court has held in first-degree kidnapping cases based on the element of sexual assault "the legislature did not intend that defendants be punished for both the first degree kidnapping and the underlying sexual assault." *Freeland*, 316 N.C. at 23, 340 S.E.2d at 40-41. In *Freeland*, the defendant was convicted and sentenced on a first-degree rape charge, first-degree sexual offense, and first-degree kidnapping. *Id.* 316 N.C. at 14, 340 S.E.2d at 36. Our Supreme Court held "in finding [the]

defendant guilty of first degree kidnapping the jury must have relied on the rape or sexual offense to satisfy the sexual assault element. As a result [the] defendant was unconstitutionally subjected to double punishment under statutes proscribing the same conduct." *Id.* at 21, 340 S.E.2d at 39; *see also State v. Barksdale,* 237 N.C. App. 464, 474, 768 S.E.2d 126, 132 (2014) (finding violation of double jeopardy where "one of the two sex offense charges must be the basis for th[e] count of first degree kidnapping[]").

Had the jury been correctly instructed on the first-degree kidnapping indictment language and found Defendant guilty of first-degree kidnapping based on sexual assault the trial court could not have sentenced Defendant for all the sexual offenses and the first-degree kidnapping offense without violating double jeopardy. As a result, the instructional error by the trial court affected Defendant's sentencing and we must remand for resentencing. Given the similarity between the convictions here and those in *Stinson*, we are bound to adopt its directions on remand:

> Because it is impossible to determine from the record whether the same sexual acts used for the rape and indecent liberties convictions were the basis of the jury's first degree kidnapping conviction, we cannot ascertain whether either or both of these convictions in combination with the kidnapping conviction is unconstitutional. Rather than arresting judgment on both the rape and indecent liberties convictions, the remedy most consistent with the jury's verdict and the one we order is to arrest judgment on the first degree kidnapping conviction and remand the case to the trial court to resentence [the] defendant for second

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

degree kidnapping. The remaining judgments are not
affected.

*Stinson*, 127 N.C. App. at 258, 489 S.E.2d at 186.

## D. Father's Testimony[9]

The Majority finds the cross-examination of Defendant's father to be relevant and concludes Defendant was not prejudiced by the admission of his father's testimony. I dissent as this issue was not preserved for appellate review.

Defendant argues the trial court erred in allowing irrelevant cross-examination of his father. Assuming, *arguendo*, this testimony was irrelevant, this issue was not preserved for review on appeal.

N.C. R. App. P 10(a)(1) provides

> to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the *specific grounds* for the ruling the party desired the court to make if the *specific grounds* were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.

N.C. R. App. P 10(a)(1) (2020) (emphasis added). "A general objection, when overruled, is ordinarily not adequate unless the evidence, considered as a whole, makes it clear that there is no purpose to be served from admitting the evidence." *State v. Patterson*, 249 N.C. App. 659, 664, 791 S.E.2d 517, 521 (2016) (quoting *State v. Jones*, 342 N.C. 523, 535, 467 S.E.2d 12, 20 (1996)).

---

[9] This section corresponds with the Majority Part IV. *Supra* at 24-28.

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

Here, Defendant only generally objected to the testimony at issue. Defendant's reason for objecting, and the trial court's reason for overruling are not provided in the Record. Additionally, the "specific grounds were not apparent from the context" as the objection could have been related to various issues of admissibility, not just relevancy. N.C. R. App. P 10(a)(1) (2020). The Record here is unclear as to the grounds for the objection and the trial court's basis for overruling, therefore this issue is not preserved for review and should be dismissed.

Additionally, even assuming, *arguendo*, this issue was preserved for review, if the trial court erroneously admitted this evidence, its admission did not prejudice Defendant. "A new trial will not be ordered automatically each time a court rules erroneously on the admissibility of evidence." *State v. Mebane*, 106 N.C. App. 516, 529, 418 S.E.2d 245, 253 (1992) (citing *State v. Galloway*, 304 N.C. 485, 496, 284 S.E.2d 509, 516 (1981)). "Evidentiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial." *State v. Ferguson*, 145 N.C. App. 302, 307, 549 S.E.2d 889, 893 (2001); *see also* N.C.G.S. § 15A-1443(a) (2019).

Here, Defendant has not met his burden of demonstrating that had the erroneously admitted evidence been excluded, there was a reasonable probability a different result would have been reached. A review of the Record and transcripts reveals the testimony of Defendant's father had little impact on the trial. Given the

*Murphy, J., concurring in part, concurring in result only in part, and dissenting in part.*

strength of the evidence against Defendant from Maya and Dana's testimony, even assuming, *arguendo*, the father's testimony was irrelevant, Defendant has not demonstrated prejudice.

## **CONCLUSION**

For the reasons stated above, I concur in part, concur in result only in part, and respectfully dissent in part.